**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 14-cv-1584-WJM-NYW

SHARON KNIGHT,

      Plaintiff,

v.

CENTURY PARK ASSOCIATES, LLC,

      Defendant.

---

**ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND REMANDING CASE TO STATE COURT**

---

On June 5, 2014, Defendant Century Park Associates ("Defendant") removed the instant action from the District Court of Boulder County, Colorado, to this Court. (ECF No. 1.)  Plaintiff Sharon Knight ("Plaintiff") alleges that Defendant, Plaintiff's former employer, violated Colorado Revised Statute § 8-2-123, terminated Plaintiff in violation of public policy, and engaged in discriminatory employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), and the Colorado Anti-Discrimination Act, Colorado Revised Statute § 24-34-401, *et seq*. ("CADA").  (ECF No. 13.)  Before the Court is Defendant's Motion for Summary Judgment ("Motion").  (ECF No. 35.)  For the reasons set forth below, the Motion is granted in part.

# I.  BACKGROUND

The relevant facts, viewed in the light most favorable to Plaintiff, are as follows.

Plaintiff was hired at Bridge Assisted Living ("Bridge"), a facility operated by Defendant,

in October 2006.  (ECF No. 37-7 at 1.)  On November 14, 2010, Plaintiff was notified

that a Bridge resident may have been abused by a staff member.  (ECF No. 35 at 2.)

On November 15, 2010, Plaintiff filed a Complaint with the Health Facilities and

Emergency Medical Services Division of the Department of Public Health based on the

resident abuse.  (*Id*.)  On November 29, 2010, Plaintiff was notified that a different

Bridge resident had significant bruising, but could not explain how she became bruised.

(*Id*.)  Bridge's General Manager, Shirley McNeff, reported this incident to the Longmont

Police Department.  (*Id*. at 2-3.)

Plaintiff testified that, beginning in approximately December 2010, Lisa

Rademacher, the business office manager, and two other employees, Jessica Schlagel

and Brittany Cox, harassed and/or undermined Plaintiff.  (ECF No. 37-2 at 4-5.)  After

Plaintiff complained about the alleged harassment, on January 24, 2011, Plaintiff, Ms.

Rademacher, and Ms. McNeff met with Jackie Bobbitt, Defendant's Senior Regional

Director of Operations, who informed the three that if they could not "work it out," she

would decide "what changes would be made."  (ECF No. 37 at 3.)  Later that same day,

Ms. Rademacher emailed Ms. Bobbitt alleging Plaintiff had engaged in inappropriate

sexual conduct with Ms. Schlagel.  (*Id*.)

Ms. Bobbitt interviewed Ms. Schlagel and Ms. Cox on February 23, 2011.  (ECF

Nos. 35-4 & 35-6).  Ms. Schlagel stated that Plaintiff made physical advances on her at

various times in the workplace.  (ECF No. 35-6.)  Ms. Cox reported that at a Halloween

party off-site, "[Plaintiff] grabbed my breasts.  I said 'stop.'  Then I walked away."[1]  (ECF

No. 35-4 at 3.)  Ms. Cox also claimed that she had witnessed Plaintiff and another

Bridge employee, Amanda Cletcher, kissing in a car at work.[2]  (ECF No. 35-5.)  Plaintiff

was terminated on February 23, 2011, allegedly for "poor job performance and poor

judgment."  (ECF No. 37-2.)

## II.  LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem

Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute

regarding a material fact depends upon whether the evidence presents a sufficient

disagreement as to require submission to a jury or, conversely, is so one-sided that one

party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49

(1986); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense, and a factual

dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a

reasonable juror could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  The

---

[1] Ms. Schlagel and Ms. Cox's statements were recorded in separate "Workplace Investigation" forms attached as exhibits to Defendant's Motion.  (ECF Nos. 35-4 & 35-5.)

[2] Ms. Doss's sworn affidavit satisfies Federal Rule of Evidence 901 as to this evidence and the information contained in the "Workplace Investigation" forms referenced above.  (ECF No. 40-1.)  This evidence is not material to the Court's holding, in any event.

Court must examine the facts in the light most favorable to the nonmoving party, and resolve factual ambiguities against the moving party. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).  The summary judgment standard thus favors a right to trial. *See id.*

## III.  ANALYSIS

Defendant argues that Plaintiff's Title VII and CADA gender discrimination claims are time-barred.  (ECF No. 35 at 2.)  Defendant further argues that Plaintiff's retaliation claims fail because her termination occurred due to the sexual harassment investigation rather than any other reason.  (*Id*.)  Plaintiff responds that the discovery rule or equitable tolling renders her gender discrimination claims timely, and that Defendant's stated reason for her termination was pretextual.  The Court addresses these arguments below.

### A.  Plaintiff's Title VII Claim

Defendant argues that Plaintiff's Title VII gender discrimination claim is time-barred.  (ECF No. 35 at 11.)  A charge of discrimination under Title VII must be filed with the Equal Employment Opportunity Commission ("EEOC") within 180 or 300 days (depending on the situation) "after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1).  "A claim not filed within these statutory limits is time barred."  *Daniels v. United Parcel Serv., Inc*., 701 F.3d 620, 628 (10th Cir. 2012)*; see also Noland v. City of Albuquerque*, 779 F. Supp. 2d 1214, 1222 (D.N.M. 2011) ("Filing a charge of discrimination with the EEOC is a jurisdictional prerequisite to the institution of a lawsuit based on a claim of employment discrimination under Title VII.").

4

Plaintiff does not dispute that she was terminated on February 23, 2011, but did not file a charge of discrimination with the EEOC until January 11, 2013.  (*Compare* ECF No. 35 at 7, *with* ECF No. 37 at 2.)

The Tenth Circuit has held that "the clock starts running when the plaintiff first knew or should have known of his injury, whether or not he realized the cause of his injury was unlawful." *Almond v. Unified Sch. Dist.*, 665 F.3d 1174, 1176 (10th Cir. 2011).  Thus, "an employee who discovers, or should have discovered, the *injury* (the adverse employment decision) need not be aware of the unlawful *discriminatory intent* behind that act for the limitations clock to start ticking." *Id*. at 1177 (emphasis in original).  This rule generally means that "a claim accrues when the disputed employment practice—the demotion, transfer, *firing*, refusal to hire, or the like—is first announced to the plaintiff." *Id*. (emphasis added).

Here, Plaintiff argues that she had no knowledge that Defendant may have terminated her in violation of Title VII until she received Defendant's initial disclosures in December 2012, which contained evidence that she had been targeted based on her "masculine appearance." (ECF No. 37 at 19.)  Plaintiff therefore argues that the discovery rule or equitable tolling should apply to render her discrimination claim timely. (*Id*. at 19-20.)

Plaintiff cites only one case, from the Seventh Circuit, to support her contention that the discovery rule applies here.  (*Id*.)  More importantly, Plaintiff fails to address how the discovery rule applies in light of *Almond*'s clear holding that an employee need not be aware of the discriminatory intent behind the adverse employment action for the

clock to start running.  Plaintiff was obviously aware of her termination on February 23, 2011, at which time the limitations period began to run.  The Court therefore declines to apply the discovery rule to this case.

Nor will equitable tolling save Plaintiff's claim here, although the concept could apply in the proper circumstances.  *See Benton v. Town of S. Fork & Police Dep't*, 553 F. App'x 772, 779 (10th Cir. 2014) ("Compliance with the 300-day filing requirement is a condition precedent to suit that functions like a statute of limitations and is subject to waiver, estoppel, and equitable tolling.").  Equitable tolling "is appropriate only where the circumstances of the case rise to the level of *active deception* . . . where a plaintiff is lulled into inaction by [her] past employer, state or federal agencies, or the courts." *Id*. (citation omitted) (emphasis added).  Such active deception occurs where the employer should have known that its actions would cause the employee to delay filing his charge, or when the employer misleads the employee regarding a cause of action. *Id*. However, equitable tolling is inappropriate if an employee is "aware of all of the facts constituting discriminatory treatment but lacks direct knowledge of the employer's subjective discriminatory purpose." *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1235 (10th Cir. 1999).

Such is the case here.  Although Plaintiff claims that she was first put on notice of the alleged gender discrimination on receipt of Defendant's initial disclosures, Plaintiff knew she could have a claim against Defendant long before then as evidenced by this lawsuit.  An employee need not know all of the evidence on which she might rely at trial in order to file an EEOC charge:

> We may presume that many facts will come to light after the
> date of an employee's termination, and indeed one purpose
> of a charge and a complaint is to initiate the process of
> uncovering them.  It is sufficient that [plaintiff] was on notice
> at the moment of his alleged constructive termination "to
> inquire whether there was [a] discriminatory motive for the
> discharge."

*Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1188 (10th Cir. 2003) (quoting *Hulsey v.*

*Kmart, Inc.*, 43 F.3d 555, 558 (10th Cir. 1994).  Plaintiff has submitted an affidavit in

which she states that in February 2011 she was "certain" that she had been fired for

discriminatory reasons.  (ECF No. 37-7.)  That Plaintiff initially believed she had been

fired in retaliation for her reports of resident abuse, rather than for other discriminatory

reasons due to her gender, is irrelevant because she was indisputably aware of

Defendant's alleged discriminatory motive.  Moreover, other than pointing to one line in

an e-mail that allegedly indicates she was subjected to gender discrimination, Plaintiff

cites no evidence that Defendant's conduct rose to the level of active deception.[3]  (ECF

Nos. 37 at 19 & 37-5.)  The Court therefore concludes it would be inappropriate to apply

equitable tolling in this case.  *See Stransky v. HealthONE of Denver, Inc.*, 868 F. Supp.

2d 1178, 1181 (D. Colo. 2012) ("[T]he decision to invoke equitable tolling in a particular

case lies exclusively within the sound discretion of the trial court.").

---

[3]  The January 24, 2011 and February 21, 2011 e-mails between Ms. Bobbitt and Ms.
Doss (prior to the employee interviews) in which Ms. Bobbitt stated that "[Plaintiff] MUST go"
and Ms. Doss advised Ms. Bobbitt to "[u]ltimately term[inate] [Plaintiff] unless you hear
something different in the meetings with staff (i.e., Jessica)," do not alter the Court's conclusion.
(ECF Nos. 37-5 & 37-6.)  These e-mails do not exhibit that Plaintiff's termination was a
foregone conclusion, let alone that her termination was gender-based.  Rather, Ms. Doss
explicitly stated that termination would be appropriate *unless* the investigation contradicted the
information received from Ms. Rademacher.

The Court accordingly concludes that summary judgment should enter on Plaintiff's Title VII claim.

**B.      Plaintiff's Remaining State Law Claims**

Though the issue has not been raised by either party, the Court has an independent duty to examine its jurisdiction at every stage of the litigation. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). This case was removed to federal court because Count Three—the Title VII claim—alleged a violation of federal law. (ECF No. 13 at 6-7.) Because the Court had original jurisdiction over Plaintiff's Title VII claim, it had supplemental jurisdiction over the remaining state law claims as well. 28 U.S.C. § 1367. The Court has now dismissed the Title VII claim in its entirety, and Plaintiff's remaining claims are all grounded in state law. A federal court does not have independent jurisdiction over state law claims unless those state law claims "turn on substantial questions of federal law." *Grable & Sons Metal Prods., Inc. v. Darue*, 545 U.S. 308, 312 (2005). None of the state law claims at issue in this case turns on questions of federal law.

Federal supplemental subject matter jurisdiction over state law claims "is extended at the discretion of the court and is not a plaintiff's right." *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law

8

claims." *Carnegie–Mellon Univ.*, 484 U.S. at 350.  In the interest of comity and federalism, district courts are advised against making "needless decisions of state law." *TV Commc'ns Network, Inc.*, 964 F.2d at 1028.  If federal claims are dismissed before trial, leaving only issues of state law, the federal district court should ordinarily decline to exercise supplemental jurisdiction by dismissing the case without prejudice.  *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (citing *Carnegie–Mellon Univ.*, 484 U.S. at 350).

The instant suit is not yet at trial, so issues of judicial economy and fairness are not implicated here.  *See Carnegie–Mellon Univ.,* 484 U.S. at 350.  Rather, the issues of comity and federalism are at the forefront, because the Court would have to decide matters of state law if it continued to exercise jurisdiction over Plaintiff's remaining claims.  *See McWilliams v. Jefferson County*, 463 F.3d 1113, 1117 (10th Cir. 2006).  "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."  *Thatcher Enters. v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).  The remaining causes of action either arise out of Colorado statutes or are grounded in Colorado common law; no federal laws are implicated by these claims.  Thus, there is not a compelling reason to maintain jurisdiction over this suit.

The Court finds that the remaining claims would be better addressed in state court. *See Gaenzle*, 614 F.3d at 1229; *TV Commc'ns Network, Inc.*, 964 F.2d at 1028; *Thatcher Enters.*, 902 F.2d at 1478.  Accordingly, the Court declines to exercise its supplemental jurisdiction over the remaining claims and will remand this case to the

District Court of Boulder County.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion for Summary Judgment (ECF No. 35) is GRANTED IN
   PART;

2. Plaintiff's Title VII claim is DISMISSED WITH PREJUDICE;

3. The Court DECLINES to exercise its supplemental jurisdiction over Plaintiff's
   remaining state law claims; and

4. The above-captioned action is REMANDED to the District Court of Boulder
   County, Colorado.  The Clerk shall transmit the record.

Dated this 30th day of July, 2015.

BY THE COURT:

William J. Martinez
United States District Judge